The Honorable and Judges of the United States Court of Appeals for the Fourth Circuit Please be seated We'll be happy to hear from Mr. Davis. Thank you, Your Honor. Good morning, Your Honors. I'm Kearns Davis from the Middle District of North Carolina. May it please the Court. Your Honors, the District Court in this case expressly based its ruling on the defendants sitting silently and allowing the witnesses to testify. The court's ruling would require the defendant to break his silence to the court, to his lawyer, who is an officer of the court, or both. That is, we assert, Your Honors, the wrong legal standard for two reasons. First, evidence that a defendant merely allowed false testimony, without more, does not meet the government's burden of proof in proving the enhancement for obstruction of justice. Unless there is evidence that the defendant did something to procure or induce the testimony, perjury does not qualify for the enhancement. Second, in this case, uniquely, the District Court's express reliance on Mr. Andrews sitting silently directly violates his right against self-incrimination under the Fifth Amendment. Your Honor, this is exactly the issue that the court decided in an unpublished case, United States v. Lisinski. It's also consistent with the court's ruling in a case cited by the government, United States v. Smoot, which was affirmed, but in that case there was direct evidence of procurement, which is absent here. It doesn't have to be direct evidence, though. I mean, the government's entitled to prove its case by circumstantial evidence, is it not, as long as it meets the burden of proof beyond a reasonable doubt? Certainly, Your Honor. If there is indirect evidence, circumstantial evidence, otherwise evidence that would support the inference, evidence in the record, then it would be sufficient. And, in fact, Your Honor, it would not be beyond a reasonable doubt. This is a guidelines issue, so it would be the honest preponderance. Oh, that's right. It would be preponderance of the evidence. Thank you for questioning on that. But there must be some. Okay, but why wasn't there a lot of circumstantial evidence? I mean, this was his girlfriend, right? And his, was it his girlfriend's mother as well? Yes, ma'am. Yes, ma'am. Okay, and he was actively involved in the case in working with his attorney. He never claimed that he couldn't work with his attorney. So the judge is supposed to, what, just simply believe that he had this relationship with his girlfriend and her mother and they just appeared without him knowing it? Well, that's right. I mean, is that really credible in the real world, that these things happen that way? Your Honor, the witnesses were the girlfriend and the mother of the girlfriend. And the nature of the testimony was alibi evidence. Where was he on a particular night? Right. Which distinguishes this case from some others where we have, for example, the co-conspirator testifying. Yes, there is, the court noted in the record that the defendant had been actively engaged in the courtroom. Of course, those aren't privileged communications. The issue we have here is that the court is making assumptions, and that's all we have about what communications occurred outside the courtroom. Mr. Davis, what about the fact that the evidence was very strong in terms of his involvement in the robbery? I mean, the store manager's wallet was found in his car, was it not? Yes, Your Honor. In his abandoned vehicle? So why can't the trial court then consider that as part of the compilation of facts, circumstantial facts? In other words, if there's overwhelming evidence that it really was him, the store manager's wallet was found in the car. There was a cell phone of his that was found in the car. So it clearly was his car, and clearly a fruit of the robbery was found in his car. So that's pretty strong evidence of his involvement in the robbery. So why can't the court then consider that in addition to the fact that this was his girlfriend, his girlfriend's mother? He actively participated with his lawyer in preparing his case for trial. Why isn't that a preponderance of the evidence? Because it is not evidence of the enhancement, Your Honor. And what we discussed earlier about the burden of proof I think captures the issue. We're not disputing in this appeal the strength of the evidence, which of course at trial was beyond a reasonable doubt. But a sentence enhancement is just that. It is something being added on to the sentence based on facts that the court finds should increase the sentence beyond that necessary for guilt. And I think you're making a really good point. But isn't there inherently a credibility issue here in terms of whether these people participated? Are you saying there is no credibility issue? As to whether which people participated, I'm sorry. The girlfriend and the mother participated in testimony with the defendant's knowledge and acquiescence. Well, I think there's a complete absence of evidence on that point without making assumptions about what communications occurred with the lawyer. We should agree that the, I mean, to me, this is, why isn't this simply a question of whether the district court was clearly erroneous or not in applying an obstruction enhancement? I mean, there's a lot of circuit law that indicates plainly that these obstruction enhancements and district court's findings with respect to them are subject to a clearly erroneous standard of review. And what we see over and over again is an attempt on the part of counsel to transmute these factual findings into big questions of law and to, in so doing, to recalibrate the relationship between district courts and appellate courts. Things that I thought were run-of-the-mill factual findings that a district court was entitled to make are, when they come up here, somehow they always get transmuted into questions of law. And, but there remain questions of fact and to follow up on Judge Keenan's point, it's hard to see how the district court was wrong because there was an, all, this was not testimony that surprised the defendant. Before this trial, there was a notice of alibi. That's what I found. I don't see how you get by the notice of alibi. I mean, maybe you can tell me. There just isn't, you don't ignore the sufficiency of the evidence. If he says before trial that she is his alibi, right, then he's putting forth that he knows what she's going to testify to. To be clear, his counsel filed a notice of alibi. Well, there's no, there's no assertion by you that he didn't know what was in the notice of alibi, is there? There's no evidence in the record one way or the other. He had to be involved in it. How, I mean, the counsel didn't know his girlfriend coming in and didn't know his girlfriend's mother. This had to be something that was initiated quite apart from any communications with counsel. This had to be something that was orchestrated by the defendant himself to coordinate with his girlfriend and his girlfriend's mother a complete lie to bring before the court and get him off. It doesn't, nobody's prohibiting him from talking to counsel. But the only constitutional right implicated here is the right to present your own defense and to bring forward witnesses on your own behalf. And that has never been thought to encompass the right to present patently false testimony. Your Honor, I think your question captures the exact issue. I mean, as defense counsel, and Strickland underlined this, I have a duty. I was not trial counsel in this case. I was appointed to handle the appeal. But when I'm representing a criminal defendant, I have a duty to go and investigate the case. I have a duty to find witnesses. Part of that in a case where there is a particular event is looking for alibi witnesses. Now, I want to speak in terms of what could, your Honor said what must have happened. I want to speak in terms of what could have happened on this record that we don't know. Counsel goes out, sends an investigator out, finds witnesses who say he was at my house that night. Now, they may be mistaken. They may be lying. Okay. But does the defendant. I think the gist of what you're saying is counsel could have been acting on his own with investigators and the defendant would know about it. And that would account for all the evidence and would account for this notice of alibi. What about the fact that a week later he filed a pro se. This is not his counsel. This is him himself filing a pro se motion to dismiss for prosecutorial misconduct alleging witness tampering by federal officials and saying among the witnesses that were assertedly tampered with were the alleged the government told Andrews that if they took the stand as defendants at defendants trial, they'd be charged also. So, that's the defendant saying that. So, he knows that they're going to be taking the stand. Does the defendant. There's no argument there that his counsel's acting by himself. Not that his counsel's acting by himself. Without the defendant's knowledge. But I think it presents neatly the question, which is, does a defendant faced with evidence that someone is mistaken about an alibi have an obligation to raise the issue? We have a system where if the government comes in with evidence that's incorrect, certainly the defendant does not have to rise and say that's not true, Your Honor. I thought your argument had been that the defendant's lawyer had come up with this evidence. Or it could be that the defendant's lawyer came up with this alibi evidence and the defendant didn't know anything about it. But, in fact, we know from his pro se pleadings that he does know about it. Well, I'll draw a distinction, Your Honor. We know from his pro se pleadings that he knows about it. But where it originated, we don't know. I'm sorry. Why would it matter where it originated if he knew about it? If he knew these witnesses were going to be called, and it was in the trial brief, too. I mean, it's throughout the course of preparation for this case, as Judge Motz pointed out, his own self-directed pro se pleadings indicate this. And with the standard being preponderance, it's more likely than not that the trial judge has to weigh the evidence, right? Under a more likely than not standard. Well, does the trial judge have to stick his head in the sand? I mean, this guy, it seems to me, knew that the – excuse me, I shouldn't say that. I apologize. Not guy. But this defendant knew that these witnesses were going to be called. So why should the court then allow him to crouch behind the constitutional amendments when he himself raised the issue? Because the Constitution allows a defendant to stand silent in the face of the entire process. Right, but nobody's saying he had to say anything to the court. We're not – nobody's saying that. I believe that's exactly what the district court said. No, because it happens frequently that the argument is made sometimes, well, I didn't want to take the stand. But the strength of the prosecution's case and the fact that they put on this and this and this forced me to waive my right to remain silent and forced me to take the stand. The point is that the course of trial forces defendants into squirmy choices and difficult tactical choices. But the Supreme Court has never bought off on the argument because defendants during the course of trial face difficult tactical choices on how to communicate with counsel and how to take the stand or whether to take the stand. That's never been thought to implicate those constitutional rights. It's simply a result of the adversary process playing itself out. It is when the defendant reacts to it by that choice between taking the stand or not, which, of course, he has a constitutional right to do either way. And we cover that every time we take the plea. What he doesn't have a constitutional right to do is to perpetrate a fraud on the court and then for us to say the court can do absolutely nothing about it or is limited to an upward variance and a subsequent perjury trial, which we all know is not going to take place. And to come back, under the facts of this case, we say that an obstruction enhancement was clearly erroneous or for some other reason impermissible. We would say you can never do it because not only is it a notice of the alibi, not only is it the pro se submission, and not only is that the wallet found in his car, but he is conceding to somebody whom he talks to later on and not in Charlotte that, yeah, I robbed a Domino's pizza place at gunpoint. And she testifies as to that, too, in their cell phone records, indicating that the calls are being made in the vicinity of a Domino's pizza place at the same time he's saying he's with his girlfriend and his girlfriend's mother. It is a patent fraud that was perpetrated on the court and we can't get trials away from the fact that they are instruments to really ascertain accurately the truth. And this just, this argument which the defendant is making here, it simply perverts the entire purpose of what a trial is all about. We will have strayed so far from true purposes to overturn the district court in a case like this. Respectfully, your honor, the burden of proof was met at trial by the evidence of guilt, and we are not challenging that. The question is the process and whether the defendant may simply allow the process to unfold before him, even if that means people taking the stand who may have been mistaken, etc. I understand the court's position, your honor. I certainly do. And I think you have a decent argument in the abstract. But on the facts of this case, I perhaps have more sympathy with your argument in the abstract. But on the facts of this case, when you have his pro se pleading, he can't distance himself from that. It seems to me that on the basis of that, you can't say that he didn't know what these witnesses were going to testify to. In the abstract, and I'm not so very sympathetic with the government asking for an enhancement if there's a different record, a record where we don't have any input by the defendant himself. And we don't have any pretrial pleadings that go to the alibi witness. I mean, then it seems to me maybe your argument about, well, it's forcing him to violate his constitutional rights has some teeth. But that's not your record here. I mean, I know you're making the best argument you can. But it seems to me it's a pretty hard case here. To follow up on that for just a second, because what you worry about here is an obstruction enhancement being applied in situations where a defendant is surprised by testimony or where there's faulty memory or where something, I mean, there are honest mistakes made in trial and there are differences in recollection. But the guidelines commentary seems to cover that. And it says the court should be cognizant that inaccurate testimony or statements sometimes may result from confusion, mistake, or faulty memory. And thus, not all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice. And so, there are cases where your argument would be a salient one. But this just, as my colleagues, both of them have pointed out, the facts here from the standpoint of your client, they simply couldn't be worse. That's the problem. But you have some rebuttal time, too. Thank you, Your Honor. Thank you. Yes, sir. Mr. Lang, how often does your office ask for this enhancement? Whenever the facts… Whenever there's an alibi witness testifying? No, Your Honor. I'm happy to hear that because it seems to me that they could be overusing the enhancement. Yes, Your Honor. I am Robert Lang. And dealing with exactly the problems that your colleague has brought up. Your Honor, I am Robert Lang from the Middle District, and there's no question that counsel's points are valid in possibly some instances. But in this case, on the facts of this case, the trial court got it right. But Mr. Davis makes a very interesting point in terms of which evidence the court is entitled to hear in reviewing the sufficiency of the evidence on the enhancement issue. As you recall, Mr. Davis said you can't consider the evidence of guilt, the strength of the evidence of guilt, and whether that evidence was overwhelming, that there's a dividing line for the court to consider. Do you agree with that proposition that we have to exclude the evidence of guilt, whether overwhelming or not, in the analysis of the sufficiency of the evidence of the preponderance, whether the preponderance burden was met for the enhancement? Well, Your Honor, the trial court has to use the framework of the trial to determine whether, in fact, the perjury… Right, but I'm saying, do you agree or disagree with Mr. Davis's contention that the curtain drops down on the evidence regarding the robbery itself?  And the alibi question with regard to the enhancement is something entirely separate. Do you agree or disagree? And tell us about your reasoning. Well, I agree that the fact that the jury rejected the defendant's defense only has relevance to the finding of guilt. But you can't distinguish or you can't remove the context of the trial because that's what the court was looking at, all the factual underpinnings of the trial. And in relation to the alibi testimony, as the court said, it defied imagination that this was truthful testimony. And so he had to put that context to make the determination that it was false testimony knowingly offered. So I would disagree that the court completely throws away the findings and what it saw during the trial. So on a practical level, with regard to the facts of this case, you're saying the court could consider that his abandoned car was found with the manager's wallet, that his cell phone was in the car. Clearly, he had made a statement regarding his participation in a dominoes robbery. You're saying that is part of the evidence that the court can consider in reviewing the sufficiency of the enhancement. In determining whether the testimony itself was false that the defendant knowingly put forth. Yes. But in analyzing whether or not the defendant had knowledge of that, we we don't need to deal with those factual pieces in the record or would that occur to trial. So you're you're agreeing then with Mr. Davis that it's bootstrapping credibility to say, well. You know, he's he's contesting his guilt on this and he's obviously guilty of the offense. You can't import that into the enhancement analysis. Only to the extent to determine the falsity, which is the is the center of the of the enhancement being the court has to address the falsity and the truth. Guidelines commentary kind of anticipate that. I read this earlier, but it says the court should be cognizant that inaccurate statements or. And it explicitly says here. A defendant's denial of guilt. Other than a denial of guilt under oath, it constitutes perjury. So the guidelines here are that they're drawing a line. Here and what they're saying to trial courts are, you know, just just the you cannot just leap from the fact that a defendant protest his innocence or denies guilt. Or maybe surprised by a certain testimony, or that there may be differences in recollection, or they may even be inaccurate. Testimony, that's not enough for the enhancement. I think the enhancement has to be something pretty deliberate and pretty bad. And the evidence of guilt is probably one of a number. Of relevant factors that might bear on a district court's ultimate factual finding. But just because there was a lot of evidence of guilt. Doesn't get you the enhancement, I don't think. If he had not, you haven't maintained that, right? No. Would not maintain that your honor. The fact this was not a case where the defendant was assisted by some benevolent witness that came in at the 11th hour. The court has already recognized that there was a notice of alibi filed. This information was provided in the trial brief. There was a week before the defendant filed his pro se motion on 8-1. There's evidence in the record that the ATF. The point is, you can't just reason backwards from a denial of guilt or from a powerful defendant's entitled to put on his case. You can't reason backwards from the fact that he's putting on a vigorous case. To the to protest his innocence, that's. You know, that's not in and of itself, some kind of basis for an enhancement. So it. It's clear this stuff can be abused. Absolutely, but would contend strenuously that the court, the trial court did not abuse it in this case that there was. Just a tremendous amount of evidence of the defendant's active involvement. His knowledge, his relationship, all of the pro se filings he made, he made a number of pro se filings beyond. He was actively the court found that he was actively involved. And the point is, we're walking a fine line here because on the one hand, there's the danger of a of of simply. Flashing a green light to defendants who want to put on perjured or patently false testimony and saying us saying, well, and there won't be any particular consequences because the prosecution is never going to take an undertake a. Perjury prosecution for somebody who's already convicted. And is already going to spend a long time in in prison. It just isn't a wise use of resources for prosecution to undertake a separate perjury trial. So there's a danger in saying you can put this kind of stuff. You can, you can lie through your teeth. And there's nothing a court can do about it. But then, on the other hand. There's a danger in over chilling a defendant's right to put on a really vigorous defense. In fact, that's what we want them to do. So. You do understand that there's a fine line. We're walking here. So, so how does this opinion, right? Well, your honor, I know you want us to win and when I was a lawyer, I always looked at the mandate 1st. And went back to my office and then read the court's reasons, whatever they might be. So, okay, we know you want to win, but we are worried about the rationale. Even the Supreme Court obviously recognizes the right of the. The defendant or not even the Supreme Court, the Supreme Court recognizes the right of the defendant to put on a vigorous defense. But as we talked about earlier in Dunnigan, the. He doesn't have a right to present perjured testimony. So that right that is a fine line. And I'd say it's a factual inquiry here and the standard is clear error is whether on these facts. Of this case, whether or not there's substantial evidence, but we're trying to write something that would be of guidance to somebody in the next case. So, say simply an opinion, there's 3 lines that says on the facts of this case, there's no clear error. This is not so helpful for the next case. So, what principles do we look to when a defendant knowingly offers false alibi testimony and there's other factual. Evidence in the record that he had knowledge of its falsity. And that he was aware that the witnesses were being presented that that can be the basis for the obstruction enhancement. If it's determined by the court that it's false and material and satisfies the elements of perjury. You agree it's totally a circumstantial case though here. Where's the direct evidence that he knew there is intent is pro se filing. Well, that's not direct evidence that that's direct evidence that he knew the witnesses would be called. But that isn't direct evidence that he knew they'd be testifying falsely. That's still circumstantial. You're asking us to infer from the fact that he. He identified those witnesses that he knew they weren't going to be telling the truth. So, does the court need following up on what judge was asking? Does the court need to distinguish then? This kind of case, which is purely circumstantial. From the type of situation where the defendant may have taken the stand and and testify. Well, certainly we don't we don't have the issue when the defendant directly takes the stand of this knowledge issue. Obviously, the defendants presumed to know what he's going to testify. But all the cases talk about direct or inferential evidence and that there's a series of cases of the unpublished cases in this district. As well as several sister circuits have have found on these types of situations that you can. It's very difficult to infer in that attorney client when witnesses are presented and so that inferences are appropriate. So, I think that the standard would be direct or circumstantial evidence, but that the factual underpinning would have to support. You know, those findings made by the court and so it certainly it's very difficult to get to direct evidence. If a defendant doesn't testify, but certainly the obstruction enhancement should apply. If he knowingly offers perjury perjure testimony or subords perjury before the court trying to deceive the court as as a district court found in this case. It was intentionally presented to to try to show beyond a reasonable doubt that he was not the person who perpetrated the crime that he was not there. The judge Keenan made an interesting point early on. There's a certain amount of not unlimited, but there's a certain amount of faith. We're going to have to repose in in district judges and part of it. There may be a credibility component to it that the district court had the advantage of following the case from from start to finish and seeing the way it unfurled and and all of the defendant didn't take a stand here. The other 2 witnesses did and what 1 of the things apart from evidence of guilt, but 1 of the 1 of the facts. It makes it very difficult from opposing counsel's views. If there were 2 witnesses here. And 1 witness actually got on the stand and testified to this alibi and so that everybody was on notice as to what was happening. And then the other witness got on and testified once again, falsely to the same false story. So we're not we're not simply dealing here with a single witness. We're dealing with something that. Is is carefully orchestrated and not only is it carefully orchestrated, but is the heart and soul of the defense. It's not some peripheral point or some or some point on the on the margins. They're saying I was in Charlotte. With my girlfriend and my girlfriend's mother, and it was a physical impossibility. For me to have been in this other town, holding up a Domino's store manager at. At gunpoint, so the whole, the whole case was going to rise and fall. On the perjury committed by multiple witnesses. And when you combine that with the notice of alibi and the process of nation and everything, it is simply impossible to believe. The defendant wasn't really in on it. I would, I would agree with the court and that's exactly what the district court found that not only was there 1 witness, the witnesses testified back to back and so he had to know. It was beyond all knowledge at that stage. He could no longer claim fact finder could take something like that. In into account, but I think what the guidelines are concerned about is that you just can't infer from a vigorous defense and you just can't infer from an emphatic denial of guilt. That. There's a basis for an obstruction enhancement. I mean, otherwise you sweep in a lot of perfectly legitimate behavior. Certainly the guidelines recognize that they don't want to chill the defendant's right to put on a vigorous defense. And I think those those principles are there to guide the district court. But in this case, on these types of facts, this this false alibi testimony just simply was so preposterous that the district court found that adjustment was proper. But you don't ask for the enhancement in every case in which the person offers alibi witnesses. No, you're on. All right. Thank you. Thank you, sir. Thank you. Mr. Davis, thank you. Briefly on just a few points, if I may. First, I want to clarify something that I'm afraid may have been unclear. Just came about my prior argument. I don't mean to suggest at all that the trial judge cannot consider the record in making the decision. The trial judge can and does and must consider the trial record in determining the truth or falsity prong of the enhancement. The question in the issue that I meant to try to focus was the requirement of something else, evidence of procurement to support the subordination of perjury. You say the overwhelming nature of the evidence can't carry the day as to the enhancement. Correct. The guideline broadly discusses a number of ways in which obstruction of justice can occur, but it specifies subordination of perjury. Right, but you could have an obstruction of justice enhancement here without finding subordination of perjury. Well, I think that's the issue, Your Honor. I think it really focuses the issue tightly. There's certainly other ways to have obstruction of justice. You can lie to an agent. You can try to bribe somebody not to show up. But you think if it looks like it could be obstruction, you have to prove the elements of obstruction. You can't get under the – Exactly, Your Honor. But the guideline doesn't tell us that. It doesn't, but it specifies subordination of perjury as one of the ways that obstruction can be shown. But the guideline also goes on to say that the things you're reading about, that's a non-exhausted list. It's illustrative. It's not exhausted, and the guideline makes that clear. I think that's the crux of the issue, Your Honor, is that it does make that clear, but it includes specific things within that list. And in unpublished cases before, the court has looked at additional evidence of procurement. That's not binding on the court. But our suggestion would be, Your Honor, that where subordination is specified, the elements of it must be found. But, I mean, you are familiar with that legal – I mean, you really could make the argument the other way. Since subordination of perjury is one of the things that's particularly listed, anything that's very close to it, since you can have other things, would also be included. That's exactly right, Your Honor. That's why the constitutional issue is important because it could – I could make the argument the other way. But what we don't have here, and during Mr. Lange's argument, if I may – I do have some time. During Mr. Lange's argument, there was some discussion of the defendant's defense being, I wasn't there. I was in Charlotte. I wasn't at Domino's. What we actually have in this record is the defendant didn't say, I wasn't there. The defendant didn't say anything. He didn't take the stand. I know, but, again, the relevant conduct standard is important here because it doesn't seem to require that because it says, under this section, the defendant is accountable for the defendant's own conduct and for conduct that the defendant aided or abetted, counseled, commanded, induced, procured, or willfully caused. Now, that's a fairly – those verbs in the relevant conduct standard under the guidelines commentary of footnote 9 would seem to indicate that it doesn't require the defendant to actually take the stand as long as there was a causation and an aiding and abetting and the like. So I just wonder if your argument doesn't founder on the shoals of that footnote. Actually, Your Honor, I think that footnote focuses the argument. There is a series of verbs, and the defendant is the subject. The defendant is the noun, and what we lack here is evidence of the defendant taking any of those steps. We have a conclusion based on the strength of the evidence and the court's determination that what the witnesses said was inaccurate. But we don't actually have any evidence, direct or otherwise, of the defendant doing anything. A trier of fact is entitled to apply common sense. And it really, on this – again, on this particular record, it simply defies belief that the defendant was not very actively involved. I mean, it's not just one piece of evidence. It's all the things we've been over, the process of admission, the notice of alibi, the fact that the evidence was overwhelming, the fact that there were multiple witnesses put on. It's just a mountain of things. Your Honor, to be very clear, I'm not at all disputing the reasonableness of the district court's belief. The question is the threshold question before that. What must the government show in order for the court to be in position to make that decision? And what do we do in order to protect the process? And I think here – But you see, sometimes when you – if you rule for somebody on really bad facts, what you've established is a broad principle of law. And I appreciate your argument here, but if we rule for you, we would come very close to saying never. No matter what kind of false testimony was presented, no matter how the facts of the case indicate how deeply it was involved, a district court may never use a 3C1.1 obstruction enhancement. Unless the defendant himself testifies. Unless maybe the defendant himself testifies. And then we get into a whole other set of constitutional rights. So that is a terribly broad ruling in an area which I think this argument has brought up requires walking a fine line and giving some credence to district court fact-finding. These are experienced people, by and large, trial judges. They would handle it responsibly, and it's always subject to court of appeals review. But my problem is when you rule someone's way notwithstanding a set of horribly bad facts, you've established a terribly broad proposition. And the proposition here could not be more damaging to the integrity of the judicial process, which is you can put on false testimony before the court ad infinitum and without consequence. And that's a step that I would have a very hard time taking. Your Honor, may I respond to the court's question? Absolutely. I always give you the last word. Thank you, Your Honor. I'd suggest that it's very narrow here because we have the, from what I've seen, unique circumstance where the court actually relied on the fact that the defendant was sitting silently and so brought in specifically the right to silence in the court's decision. But in the sufficiency of the evidence analysis, we don't have to rely on anything the trial court said if the evidence is otherwise sufficient, do we? The court certainly can look at the evidence itself. Right. We can't make a separate credibility finding. I understand that. But we can certainly look at the other evidence, and we don't have to accept everything the trial court said. No, Your Honor, not on the factual part of the two-part burden of proof, which is clear error as to factual findings and de novo as to the wrong legal standard. The ruling in Lisinski, for example, was that the court applied the wrong legal standard, and I would suggest that by considering the defendant's silence, the court applied the wrong standard. Thank you very much, Your Honor. Mr. Davis, I see that you're court appointed, and you've done a very able job with this case, and we really do appreciate it. We'd like to come down and shake hands with both of you, and then we will take a brief recess and come back for our last case. Thank you, Your Honor.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Barbara Milano Keenan